## In the Matter of Establishment Inspection of C F & I STEEL CORPORATION.

Civ. A. No. 79–W–1581.

United States District Court,
D. Colorado.

May 5, 1980.

Tedrick Housh, Regional Sol., Kansas City, Mo., Henry Mahlman, Associate Regional Sol., Dept. of Labor, Denver, Colo., Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol., for Occupational Safety and Health.

Allen H. Feldman, Counsel for App. Litigation, Charles I. Hadden, Asst. Counsel for App. Litigation, Daniel J. Mick, Asst. for Regional Litigation, Thomas L. Holzman, Atty., Dept. of Labor, Washington, D. C., Ann M. Noble, Atty., Dept. of Labor, Denver, Colo., for the U. S. Dept. of Labor.

Welborn, Dufford, Cook & Brown by John D. Faught and Miles C. Cortez, Jr., Denver, Colo., for C F & I Steel Corp.

Gorsuch, Kirgis, Campbell, Walker & Grover by John S. Pfeiffer and John Mullins, Denver, Colo., for Wheeling Pittsburg Steel Corp., amicus curiae.

Reed, Smith, Shaw & McClay by W. Scott Railton and Edith E. Holiday, Washington, D. C., for American Iron & Steel Institute, amicus curiae.

Edward J. Scheunemann, Denver, Colo. and Mary-Win O'Brien, Pittsburgh, Pa., for United Steel Workers of America, amicus curiae.

## MEMORANDUM OPINION

WINNER, Chief Judge.

The books are full of cases discussing what is and what is not a "final decision of a district court" which will permit an appeal under 28 U.S.C. § 1291, but this is the first case I have seen in which a direct appeal is attempted from a non-order,[1] and I think that this singular maneuver is deserving of a short opinion, because if a notice of setting can be directly appealed, countless similar "original proceedings" can be filed in all Courts of Appeals, and calendaring by district courts is going to become a shambles. A bit of local history concerning OSHA warrants is in order.

The judges of this district have long encountered problems in trying to establish procedures complying with the directions of the United States Supreme Court in *Marshall v. Barlows, Inc.* (1978) 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305. All of the judges of this district believe firmly in consistency among the individual judges insofar as such consistency is possible, and we believed at the time *Marshall v. Barlows, Inc.* was decided (and we still think) that when requests for OSHA search warrants are presented we should follow uniform procedures in handling them. We attempted to have all judges participate in the first OSHA warrant case filed after *Barlows* was decided, and we have continued our efforts to try to structure some case for a decision acceptable to all judges of the court. We think that if we can work out uniform guidelines, future OSHA warrants can be presented to United States Magistrates, but we aren't getting very far in accomplishing our goal, although we are still working at it. If this case ever gets off the ground, we shall try again, and all judges will be afforded opportunity for input to the result.

The first application for an OSHA search warrant was a request to search a place called Poor Richards—a leather shop operating in a cubicle perhaps 20 feet square located in Larimer Square, a redeveloped area in Denver. After a given amount of backing and filling, the Department of Labor dismissed the request and we never got a chance to look at the problem. Next, the Secretary said that he wanted to conduct an extensive search of the Colorado Fuel & Iron Co. steel mill (hereinafter C. F. & I.) based upon an alleged general administrative plan keyed to supposed neutral criteria all as *Barlows* demanded. That application was dated April 2, 1979, and authority to inspect the entire plant for a period of six months was requested. The number of inspectors was infinite. A hearing was held the day after the request was made, and decision was delayed pending briefs on reasonableness. Suffice it to say, on September 26, 1979, after all of the judges in this district had planned to hear the argument en banc, the Secretary withdrew his request, admitting that it was ill-founded.

Next, a NIOSH [as distinguished from an OSHA] warrant was requested by the Secretary of Health, Education and Welfare. It was based on specific complaints. It alleged a true emergency; it asked only for a limited search and I issued the warrant ex parte because I thought there was a showing of an emergent circumstance and that the search was reasonable on its face. [Because of our desire for uniformity, Judge Kane suggested reassignment of that case to me and that's how I happened to rule on it.]

This case is the third effort by OSHA to get a warrant issued in Colorado. I glean from the pleadings and brief filed by the Secretary of Labor that some complaints were made by C. F. & I. employees. After more than just a little while, interviews of the complainants were conducted by representatives of the Secretary of Labor to look into the accusations. The dates of the complaints and the dates of the interviews I list

1. The appeal is taken from a form routinely mailed to counsel entitled "Notice of Hearing." Blanks in the form are filled in so that this notice reads, "You are advised that a hearing

on application for inspection—OSHA has been set at 9:30 a. m. on Friday, May 16, 1980 in Courtroom 502, United States Courthouse, Denver, Colorado."

below to show the breakneck speed with which the government inspectors or interviewers moved in on the complaints now said to be so needful of immediate action.

| Date of Complaint | Date of Interview |
| --- | --- |
| May 31, 1979 | August 8, and November 7, 1979 |
| July 9, 1979 | August 1, and November 7, 1979 |
| August 8, 1978 | November 9, 1979 |
| August 22, 1978 | November 6, 1979 |
| August 16, 1978 | November 5, 1979 |

On November 23, 1979, fifteen months after the dates of three of the five complaints mentioned above, the Secretary of Labor filed an "Application for An Administrative Inspection Warrant Pursuant to the Occupational Safety and Health Act of 1970," and in that application I am assured that "the desired inspection and investigation are contemplated as a part of an inspection program designed to assure compliance with the Act, and that there are reasonable legislative and administrative standards for conducting the inspection." What the "program" is or what the "reasonable standards" are, I have not been told, but the application then goes ahead and lists the complaints and the urgency with which the followup interviews were conducted. The prayer of the application is "that the Court issue, ex parte, its inspection warrant." Attached to the application is a form of warrant which, post-Barlows, the Secretary acknowledges requires my signature but which I guess in plaintiff's eyes must be signed by me acting in a capacity ministerial to the demands of counsel for the Labor Department. The warrant which I am directed to sign reads in its entirety:

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| In The Matter Of | ) |
| --- | --- |
| | ) |
| Establishment Inspection of: | ) |
| C.F.&I. STEEL CORPORATION | ) |

WARRANT FOR INSPECTION

To: William E. Corrigan
Area Director
Occupational Safety and Health Administration
Denver, Colorado

Application has been made, and the Court finding there is sufficient cause to permit entry for inspection and investigation at the establishment and workplace described as:

C. F. & I. Steel Corporation, Pueblo, Colorado

IT IS HEREBY ORDERED that pursuant to § 8(a) of the Occupational Safety and Health Act of 1970 (29 U.S.C. § 651 *et seq.*), hereinafter referred to as the Act, YOU AND YOUR DULY DESIGNATED REPRESENTATIVES of the Occupational Safety and Health Administration, U. S. Department of Labor, totalling not more than 20 persons, to be divided into not more than four inspection teams, ARE AUTHORIZED to enter without delay the above described establishment and workplace during regular working hours and shifts or at other reasonable times, to inspect and investigate, within reasonable limits and in a reasonable manner, the aforesaid establishment or other area, workplace, or work environment in the Pueblo, Colorado, vicinity where and while work is performed by employees of the employer, and all pertinent conditions, structures, machines, apparatus, devices, equipment and materials therein (excepting only the coke oven batteries), and to review and copy records required to be kept by the Act and regulations issued thereunder, and other records which are directly related to the purpose of the inspection and investigation, to determine whether this employer is furnishing to its employees employment and a place of employment which are free from recognized

hazards that are causing or likely to cause death or serious physical harm to its employees, and whether this employer is complying with the occupational safety and health standards promulgated under the Act and the rules, regulations and orders issued pursuant to the Act.

The compliance officers will afford an opportunity to representatives of the employer, and to representatives authorized by its employees, to accompany each inspection team for the purpose of aiding the inspection, pursuant to § 8(e) of the Act.

During the course of the inspection and investigation, the compliance officers are authorized to take photographs and samples, employ other reasonable investigative techniques, and to question privately at the worksite, any employer, owner, operator, agent, or employees of the establishment. This includes, but is not limited to area sampling, bulk sampling, wipe sampling and the taking of personal samples by attaching sampling devices such as air samplers and dosimeters to the persons of employees. Such activities will be accomplished so as to preclude unreasonable disruption of the operation of the employer's establishment.

Information obtained or observed which the employer identifies as containing or revealing trade secrets shall be preserved in confidence, pursuant to § 15 of the Act, to 29 C.F.R. 1903.9 and to 18 U.S.C. 1905.

A return shall be made to this Court, showing the inspection has been completed, within 60 days of the date of this inspection warrant.

Dated this _____ day of November 1979.

UNITED STATES DISTRICT JUDGE

On its face, the warrant is somewhat contradictory of the Secretary's position in this case because he recites for me in the warrant that I have "found" that there is

sufficient cause for the warrant, but, I soon learned he doesn't want to let me have enough information to "find" anything, and his ultimate position is that I have no right to pass upon the existence of any kind of cause, albeit I readily admit that *Barlows* says that probable cause in the "criminal sense" is not required. By its language the warrant requires that the inspectors act reasonably, but, as I shall explain, I am not to be permitted to ask anyone what OSHA thinks is reasonable.

The same day the application was filed [which was the Friday after Thanksgiving] I set it for hearing, and counsel for the Secretary appeared. I asked if the matter should be heard ex parte, and I was told that I had no choice and that it had to be. I asked if I could hear any testimony in camera, and, although a witness for OSHA was in the courtroom, OSHA counsel declined to let me listen to him, even in camera. Seemingly, by the time the briefs I shall mention presently were filed, the Secretary reversed his position on this point, and now I think that the government believes it is not verboten for a United States District Judge to listen to testimony in secret in advance of issuing the demanded warrant. I think that the government now concedes that I can ask at least a few questions as to the reasonableness of and need for the 20-man 60-day warrant. However, I don't think that the government is yet ready to go so far as to say that I have any right to make any determination of whether there is or is not any type of cause to order such an extensive intrusion. [I guess that the language of the warrant prepared by counsel reciting, "and the Court finding there is sufficient cause" is just polite boilerplate.]

On November 23, 1979, and continuously down to today, the Secretary has urged that the warrant *must* issue ex parte because Judge McWilliams said in *Marshall v. W. & W. Steel Co., Inc.* (1979) 10 Cir., 604 F.2d 1322 a warrant *could* issue ex parte.[2]

2. It is surely arguable that the Supreme Court said just that in *Barlows*. The Court said, "Whether the Secretary proceeds to secure a warrant or other process, *with or without notice*, will not depend on his demonstrating probable cause to believe that conditions in

violation of OSHA exist on the premises." To me, the phrase *"with or without notice"* can be argued to mean that if a trial judge thinks justice demands notice, the trial judge can require it. If there is notice, maybe there is a right to be present. All I have asked is to hear

*Marshall v. W. & W. Steel Co., Inc.* surprised me not at all since that is exactly what I had already done with the NIOSH warrant aimed at C. F. & I. when an adequate showing was made by HEW. I tried to explain to counsel that to meet an emergency and to avoid surreptitious removal of a dangerous situation if advance warning of an inspection were given, I would issue OSHA warrants ex parte, but I was perplexed at the argument that ex parte action was essential to a 20-man 60-day inspection. I commented that I thought that about the time the first inspector arrived on the first day, the inspectee would have opportunity to eliminate almost all quickly remedial violations. I explained that if there were suspicion of specific dangerous situations which could be corrected on short notice, I would issue a reasonably limited warrant ex parte. This didn't satisfy the Secretary, and his position remained and remains adamant that I must act in secret and that the other side cannot be given any opportunity to appear and be heard, although it is now conceded [I think] that I can chat a little bit with a witness carefully selected and woodshedded in advance by the government. This, I guess, would be the limited inquiry I could make even if the plant to be inspected were a munitions plant where an uninformed inspector might bring about a catastrophe by pushing the wrong button. Moreover, I suppose that would be true if OSHA decided that the employees' lockers or automobiles posed a threat of secreting things constituting a violation of some OSHA regulation. I hope that the Union doesn't brush aside this possible eventuality on the basis of cheerful thinking that it is so absurd it won't happen. I do not think it beyond the realm of possibility that this position or some similar stance may be taken sometime in the future by some over-eager OSHA inspector.

It is sad but it is true that the government is not held to the morals of the market place. The protections of the Uniform Commercial Code applicable to oral assurances which may contradict written instruments do not apply to fine print in government documents. See, *Trautwein v. Milbachler* (1980) D.C.Colo., 485 F.Supp. 316. The warrant I am asked to sign covers the "Pueblo, Colorado vicinity," [whatever geographic area that phrase may include] and it authorizes a search of the persons of all employees to obtain "personal" samples. Employees can be searched under the aegis of this Court's order with "sampling devices" and "dosimeters." What happens if controlled substances are discovered? Does the Union seriously support the issuance of an ex parte warrant this intrusive on the rights of its members? Wouldn't the Union like to appear to discuss and maybe clarify *on the record* the language in the warrant? Of course the warrant issues under the Act, but 20 different inspectors will have 60 days to individually decide what the ambiguous wording means, and wouldn't everyone be in better shape if both employer and employee were afforded opportunity to work on phraseology of this Labor Department phrased court order? In fairness to Union counsel, I don't think that they have had a chance to read the warrant before receipt of this opinion, and I think that their opposition to a parte hearing has been based on academic principles rather than on fair knowledge of the facts.

In any event, sometime I would like to have Union counsel comment on the Union's position as to the issuance of an ex parte warrant aimed at employees' personal and property rights. Should the rule applied to employers be the same as or diametric to the rule applied to employees? As I have mentioned, the requested warrant would permit the taking of "personal samples" from Union members, and any limitations on the kind of "personal samples" which can be taken from someone not in custody

---

argument on this, and after the argument, I will rule one way or the other on the narrow question of whether the application *must* be ex parte. I may rule either way and I may rule that all applications need not be parte, but that I want to hear testimony in camera in the first instance. Then, after that testimony is received, I may say that this warrant should issue ex parte or I may say reason and justice demand notice. What I will rule depends on what I decide after argument.

aren't spelled out very clearly. I worry about both employee and employer Fourth Amendment rights under this sweeping warrant. I suggest that the Union not disdain this concern of mine. Erosion of individual rights when it is the fisc which is endangered has occurred over the years. See, *California Bankers Association v. Shultz* (1974) 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 and *United States v. LaSalle National Bank* (1978) 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221, together with the cases it discusses which led up to the decision in *LaSalle*. *California Bankers* hints that where the public interest is sufficient, rights may be narrowed to compare with rights applied when it is the fisc which needs help, and employee safety is clearly an important public interest. The Union should remember that it was because representatives of the individual depositors were not before the court in *California Bankers* that the court refused to rule on the individuals' Fourth and Fifth Amendment rights. I suggest that ex parte OSHA warrants may pose a greater threat to employees than to employers, because it must be remembered that corporations have lesser Fourth Amendment rights than do individuals. *California Bankers Association v. Shultz*, supra. It may well be that employee interests in issuance of a warrant to search the "vicinity of Pueblo, Colorado," may be very great and it may be that unless the warrant's language is narrowed, or clarified, both sides should join in a demand that OSHA warrants should issue ex parte only to handle situations where an evil can be corrected if notice is given.

Because I was troubled about the meaning of *Barlows* and because I read that case to say that a district judge is supposed to be something more than a puppet yanked about by strings pulled by the Department of Labor, I inquired in some depth about the right of C. F. & I. to appear, [and I am just as concerned about the Union's rights]. The Government insisted the warrant had to issue ex parte, and in light of the firmness of the government's position on November 23, 1979, I said that I wanted to think about the matter over the weekend and I set the application for further hearing at 9:00 a. m. on the following Monday. [By remarkable coincidence, having recessed a then ongoing trial until 8:00 a. m. November 26, 1980, over the Thanksgiving holiday, counsel for Wheeling Pittsburg Steel and C. F. & I. (the litigants in the recessed trial) just happened to be in the courtroom at 9:00 a. m. on Monday, November 26, 1979.]

My concerns were tied not only to generalized Fourth Amendment problems and *Barlows*. I was also worried about a case decided one week after *Barlows*, namely, *State of Michigan v. Tyler* (1978) 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486. It seemed then and it now seems to me that Justice Powell may have there rejected just about the same position urged by government counsel in this case. It was argued in *Tyler* that where the inspection was by fire inspectors following a fire, "no purpose would be served by requiring warrants to investigate the cause of a fire." The State of Michigan contended that although in the usual situation, "a magistrate performs the significant function of assuring that an agency's decision to conduct routine inspection of a particular dwelling conforms with reasonable legislative or administrative standards, he can do little more than rubber stamp an application to search fire-damaged premises for the cause of the blaze." In rejecting this argument, the Court said:

"To secure a warrant to investigate the cause of a fire, an official must show more than the bare fact that a fire has occurred. *The magistrate's duty is to assure that the proposed search will be reasonable, a determination that requires inquiry into the need for the intrusion on the one hand, and the threat of disruption of the occupant on the other.* For routine building inspections, a reasonable balance between these competing concerns is usually achieved by broad legislative or administrative guidelines specifying the purpose, frequency, *scope and manner of conducting the inspections.* In the context of investigatory fire searches, which are not programmatic but are responsive to individual events, a more particularized inquiry may be necessary. The number of prior entries, *the scope of*

*the search*, the time of day when it is proposed to be made, the lapse of time since the fire, the continued use of the building, and the owner's efforts to secure it against intruders might all be relevant factors. Even though a fire victim's privacy must normally yield to the vital social objective of ascertaining the cause of the fire, *the magistrate can perform the important function of preventing harassment by keeping that invasion to a minimum.* See, *See v. City of Seattle,* [387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943]; *United States v. Chadwick,* [433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538]; *Marshall v. Barlow's Inc.*" [Emphasis supplied.]

If a magistrate can and should perform that function when a fire inspection is requested, I thought that I should make some sort of inquiry about this asked for OSHA search warrant, but I was told, (a) I had to issue the warrant; (b) I had to issue it based on affidavits; (c) the government wouldn't let a witness sitting in the courtroom testify, even in camera, and (d) under no circumstances—no matter how great the intrusion and no matter how lacking in emergent conditions—could representatives of the targets of the search warrant be heard—neither C. F. & I. nor Union witnesses. With the government's feet planted in those positions, I wanted the weekend to think about the problem, and that's why I had counsel come back to court on Monday, November 26, 1979.[3]

After worrying about the problems over the weekend, I told counsel that I would not plunge into the matter nor would I order an adversary hearing on the issuance of the search warrant. Instead, I said I wanted briefs on the limited question of whether the inquiry was required to be ex parte or whether, within my discretion, I could permit opposing counsel to appear to educate me on some of the intricacies of running a steel mill, something I know nothing about. I had at that time made no decision, and I

have not now made any decision as to whether the government is right or wrong, although I confess that my predilection is to favor adversary proceedings as opposed to one-sided presentations in almost all situations, because I think this is the way our system of justice works. [I depart this predilection only where a Grand Jury is involved or where there is a showing that a guilty culprit may escape if notice is given. It is to be remembered, though, that a Grand Jury can only make an accusation, and a Grand Jury can't occupy a steel mill for 60 days.] I had said that I wanted to hear testimony in camera, and that if the in camera testimony convinced me that there was an emergency or risk of cover up if notice were given, I would issue the warrant ex parte just the way I issued the NIOSH warrant. Although 'it has been suggested that the government has retreated from its then position, I was told on November 23rd and 26th that in camera testimony wouldn't be presented and wasn't permitted even if I asked for it. The Secretary's position was that the warrant was there for me to sign, willy nilly.

I tried to point out to government counsel that with issuance of a 20-man 60-day ex parte search warrant there would be a motion to quash filed almost instanter, because even the Department of Labor wasn't able to suggest how the warrant could be executed without letting C. F. & I. know that the inspectors were there and know also the duration of their stay. Nor was government counsel able to explain why the motion to quash would not have to be heard. Once more I suggested that if there was concern about a hazardous condition or two which could be corrected in short order if advance notice were given, I would issue a search warrant aimed at those conditions and would do so ex parte. There was complete failure of communication between me and counsel on this suggestion. I added that Judge McWilliams' opinion in *W. & W.*

---

**3.** Last November I did not have before me *Payton v. Riddick* (1980) — U.S. ——, 100 S.Ct. 1371, 63 L.Ed.2d 639 but, although that case has to do with an arrest, it lends little credence to the government's argument that search warrants are to be issued without right of inquiry on the part of the issuing judge or magistrate. The footnotes in that case will provide little solace to the Secretary.

*Steel* mentions some material given to the magistrate in that case and asked if similar data could be supplied to me, but, although I promised to look at it in camera, it wasn't supplied—nor has it been to this date.

The transcript shows that I asked for "an initial brief from the government as to why this has to be an ex parte hearing on the issuance or non-issuance of the warrant." I additionally requested information from the government counsel as to why testimony—at least in camera testimony—couldn't be required of the Secretary. Government counsel asked for and was given two weeks to file a brief. Then I asked—really only half seriously—if the government thought opposing counsel could file a brief on the limited question of whether the searchee could ever be given notice of the application. [I had in mind the possibility of a request for a 200-man 600-day search.] I emphasized that the only adversary participation I was suggesting was participation limited to the question of whether there could ever be any notice to the company or individuals whose premises or persons were to be searched. This is the reply I received:

"MR. MICK: I guess my initial position would be—to be consistent with my earlier position—would be that they would not have a right to participate at this stage of the proceeding."

"THE COURT: Even on a limited question of whether they have a right to appear?"

"MR. MICK: That's correct, Your Honor."

At that point I said that I thought this raised a very important constitutional question, and I said that I would permit a brief from C. F. & I. limited to the narrow question of whether (recognizing that OSHA warrants *may* be issued ex parte), they *must* be so issued, or can notice be given to the targets of the search and can some inquiry as to legality and reasonableness be made, aided by a little input from the employees and officials of the company to be searched? Two weeks were allowed for the brief on this limited issue, and two weeks were allowed for a reply. In the meantime, amicus briefs have been submitted by Wheeling Pittsburg, the American Iron and Steel Institute and United Steelworkers of America, the Union whose members could be searched under the warrant as phrased. On February 26, 1980, after the briefs had been filed and read by me [most of them are good briefs], the limited question of whether the warrant application had to be ex parte was set for oral argument on May 16, 1980. It was this setting which is being appealed by a notice of appeal which reads:

"Notice is hereby given that Ray Marshall, Secretary of Labor, hereby appeals to the United States Court of Appeals for the Tenth Circuit from an order entered in the above case on February 16, 1980, setting the matter of a warrant application for hearing on May 16, 1980.

Respectfully submitted,
CARIN A. CLAUSS
Solicitor of Labor
BENJAMIN W. MINTZ
Associate Solicitor for
Occupational
Safety and Health
TEDRICK HOUSH
Regional Solicitor
HENRY MAHLMAN
Associate Regional
Solicitor
ALLEN H. FELDMAN
Counsel for
Appellate Litigation
CHARLES I. HADDEN
Assistant Counsel for
Appellate Litigation
DANIEL J. MICK
Assistant Counsel for
Regional Litigation
THOMAS L. HOLZMAN
Attorney
U. S. DEPARTMENT OF
LABOR
Washington, D.C. 20210
(202) 523-6818"

If diligent counsel will check their file, there is no "order entered in the above case on February 25, 1980, setting the matter of a warrant application for hearing on May 16, 1980," but there is a mimeographed "Notice of Setting," which no one has objected to, and the question which has been

set for argument is much narrower than that phrased by the Secretary. However, if the routine "notice" be treated as an "order," it is mind boggling to think about what is opened up if one can take a direct appeal from the setting of an oral argument on a narrow undecided·legal question when the selected date is 90 days after the notice, and when there is no hint that the day selected is inconvenient to appealing counsel. At least I can be reasonably sure that I won't be either reversed or affirmed on any decision I have made in this case because I haven't decided on anything yet to be either affirmed or reversed on.

A week ago, the Supreme Court decided *Curtis Waight Corporation v. General Electric Company* (1980) —— U.S. ——, 100 S.Ct. 1460, 64 L.Ed.2d 1 and the Court reversed the Third Circuit but agreed with the Tenth Circuit on the finality and appealability of a Rule 54(b) determination when there is a counterclaim pending. The decision is not in point, but its language is less than helpful to this attempted appeal of a non-order, and it clearly holds that even if I wanted to, [and I don't want to] I have done nothing in this case as to which a Rule 54(b) certification could be made.

Barely meeting the 60-day time limit imposed on the government for notices of appeal of final orders, the Secretary has appealed my non-order, and I must now decide what happens next. I assume that government counsel must reason that cases such as *Will v. United States* (1967) 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305, block off an original proceeding because I hope that it lies within my jurisdiction to set a pending matter for oral argument. However, I don't know what government counsel think about *Abney v. United States* (1977) 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651, which says that only final orders are appealable, just as countless other cases emphasize. For example, *Century Laminating, Ltd. v. Montgomery* (1979) 10 Cir., 595 F.2d 563, which holds:

"United States Courts of Appeal have only such jurisdiction as Congress specially has given them and the grant of appellate jurisdiction, with exceptions not here pertinent, is limited to appeals from final decisions of those courts. 28 U.S.C. § 1291; *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039.

"A final decision is defined as 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' *Catlin v. United States*, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911, *Kappelmann v. Delta Airlines, Inc.*, 539 F.2d 165, *Dunlop v. Ledet's Foodliner of Larose, Inc.*, 509 F.2d 1387 (5th Cir. 1975), *Donovan v. Hayden Stone, Inc.* 434 F.2d 619 (6th Cir. 1970). The rule requiring finality of a judgment or order as a prerequisite to appeal is dependent upon statute. 28 U.S.C. § 1291. Any exceptions must be made by Congress, not by the courts, although to the courts falls the responsibility of deciding whether a judgment or order is final and therefore appealable."

A companion rule says that when an appeal is taken from an appealable order, the district court is automatically divested of jurisdiction [except for jurisdiction to do a very few limited things not here involved] and jurisdiction of the case moves automatically to the Court of Appeals. *Elgen Mfg. Corp. v. Ventfabrics, Inc.* (1963) 7 Cir., 314 F.2d 440, 578 *Aune v. Reynders* (1965) 10 Cir., 344 F.2d 835, *Hogg v. United States* (1969) 6 Cir., 411 F.2d 578, *Board of Education v. York* (1970) 10 Cir., 429 F.2d 66, *Kirtland v. J. Ray McDermott & Co.* (1978) 5 Cir., 568 F.2d 1166, *International Paper Co. v. Whitson* (1979) 10 Cir., 595 F.2d 559.

Sometimes an appeal is attempted from an order which on its face is frivolous and not appealable, and the question arises as to whether a frivolous appeal divests a trial court of jurisdiction. The various Circuit Courts of Appeal are not in complete agreement on this point, but the last four years have settled the question in the Tenth Circuit. Most recently the Tenth Circuit said in *Century Laminating, Ltd. v. Montgomery* (1979) 595 F.2d 565:

"The circuits are not in agreement as to whether the filing of a notice of appeal automatically divests a district court of jurisdiction and transfers jurisdiction to

the court of appeals. See, e. g., *First National Bank of Salem, Ohio v. Hirsch,* 535 F.2d 343 (6th Cir. 1976); *United States v. Lafko,* 520 F.2d 662 (3rd Cir. 1975); and *Williams v. Bernhardt Bros. Tugboat Service, Inc.* 357 F.2d 883 (7th Cir. 1966). We have held that a district court retains jurisdiction if the notice of appeal is untimely filed or refers to a non-appealable order. *Arthur Anderson & Co. v. Finesilver,* 546 F.2d 338 (10th Cir. 1976) cert. denied, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543. And see *Hodgson v. Mahoney,* 460 F.2d 326 (1st Cir. 1972), cert. denied, 409 U.S. 1039, 93 S.Ct. 519, 34 L.Ed.2d 488; *Ruby v. Secretary of United States Navy,* 365 F.2d 385 (9th Cir. 1966) cert. denied, 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442."

In *Arthur Anderson & Co. v. Finesilver* (1976) 10 Cir., 546 F.2d 338, Judge Breitenstein said:

"In *Ruby v. Secretary of United States Navy,* 9 Cir., 365 F.2d 385, cert. denied 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442, the Ninth Circuit considered the problem in an en banc session. It held, Ibid. at 389, that if the notice of appeal is clearly invalid, the district court may ignore it. We are in essential agreement with the Ninth Circuit. If the notice of appeal is deficient by reason of untimeliness, lack of essential recitals, reference to a non-appealable order, or otherwise, the district court may ignore it and proceed with the case. If the district court is in doubt whether the notice of appeal is valid, it may decline to act further until disposition of the appeal. If the district court proceeds with the case under the mistaken belief that the notice of appeal is inoperative, the complaining party may seek relief from the court of appeals under 28 U.S.C. § 1651 and Rule 21, F. R. A. P."

With the two options open to me, I am sure that were I to go forward with the case, the Secretary would seek relief under 28 U.S.C. § 1651 and Rule 21, F. R. A. P., and the Court of Appeals doesn't need any more business—especially emergency business having to do with situations the government waited fifteen months to get around to.

Therefore, although I have no serious doubt as to the lack of finality and the non-appealability of a notice of setting, I "decline to act further until disposition of the appeal."[4] This I do because:

(1) The Department of Labor is, or it should be on the "fast side" of this case, and it is the one responsible for the delay which the Union finds so objectionable and which may be jeopardizing employees' safety and lives.

(2) As I have said, going ahead with the case as I would do under most circumstances would almost surely require action by the emergency writ panel of the Court of Appeals and, under the circumstances, I see no reason to saddle that panel with more work.

(3) Although I think that the notice of appeal of a non-order is frivolous on its face, the number and eminence of counsel who have permitted the use of their names in filing the notice of appeal gives cause to pause. I must presume that their names were affixed to the notice of appeal with full appreciation of the provisions of Rule 11, F.R.C.P. and its potential consequences, but this is something to be thought about later.

Government counsel have asked that I sign a "stay order." There is nothing to stay. In fact, the request for it seems to me to be a tacit admission that the appeal is of questionable legitimacy, because under the settled rule, a legitimate appeal divests this court of almost all of its jurisdiction and it would surely divest the court of jurisdiction to conduct a hearing or anything having to do with the merits of the

---

**4.** The Tenth Circuit spoke just ten days ago as to what it thinks about frivolous appeals. See, *Matney v. Evans* (April 24, 1980) unpublished, No. 79–2153. And, although it may be that there is "government" immunity from a cost award, 28 U.S.C. § 1927 doesn't exclude government lawyers. And, the Court's thoughts about appealing non-final orders were expressed less than a week ago. *United States v. Martin,* 620 F.2d 237 (1980).

application. That being so, a stay order is unnecessary when the appeal is from an appealable order, and if the order is not appealable, I have the choice permitted me by the Court of Appeals to stand by awaiting its action. Therefore, I take no action on the motion for a stay, and, without intending to establish precedent for future cases where I may think some other notice of appeal is frivolous, for the reasons stated, I have elected to accept the option given me by the Court of Appeals and "decline to act further until disposition of the appeal."

Two things remain for brief comment. They deal with messages left by Mr. Holzman, an attorney for OSHA, in the course of several telephone calls made by him to the court clerk since the filing of the notice of appeal. One message bewilders me; the other disconcerts me.

The bewildering message is that if I vacate the present setting, he will probably dismiss the appeal. If he dismisses it, I will fix another date for the argument, and I promise that (unless ordered to do so by the Court of Appeals) I shall not sign any search warrant until I listen to some argument from all interested persons on the narrow question set for oral argument. If I decide to sign a warrant, I predict that the extent or lack of authority to search the persons and property of employees will be defined with much more clarity than is the case in the tendered warrant form, and the views of Union counsel as to the phraseology of the warrant will be solicited.

The disconcerting message is a request to send a copy of everything which happens in this case to both Mr. Holzman's office and to his home. He has left word that mail distribution within the Labor Department is so bad he can't be sure of receiving mail addressed to him at the office address listed on the pleadings. It is scary to think that an agency charged with the responsibility for protection of the lives and safety of American labor and possessed of the awesome authority to direct the conduct of American business can't figure out how to pass out the mail it receives in its own mail room. Be that as it may, I deny this request, because the taxpayers can't afford double mailings to all lawyers in all cases,

and I am not going to give Labor Department lawyers preferential treatment. Mr. Holzman's mail will be sent to whatever single address he shows beneath his signature on the pleadings.

### Supplemental Statement

If proof positive were needed that sweeping OSHA search warrants should not be routinely issued ex parte, this case provides that proof. After this opinion was mailed to West Publishing Company, and just a few days before the printer's proof was received, I was advised that the Department of Labor did that which it should have done before the lawsuit was filed. Counsel met, discussed the problem, and worked out an amicable compromise which will result in a reasonable, limited inspection. The appeal of the non-order was dismissed, and the basic problem of whether OSHA warrants *must be* instead of *may be* issued ex parte remains unresolved. This is so although I asked the Department of Labor to structure the dismissal of its appeal in a fashion which would permit orderly presentation of the matter. So, if this important question is to be decided by a court, it will be decided in some other case, and, probably, under emergency rather than under circumstances in which time is available to the parties in interest to make full presentations.